UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, Plaintiff, v. MARINA LEAHANNE ADAME, A/K/A MARINA LEANNE ADAME, Defendant. | Case No. 1:18-CR-00391-BLW MEMORANDUM DECISION AND ORDER |
|---|---|

## INTRODUCTION

The Defendant made timely objections to the Probation Officer's findings in the Presentence Investigation Report (Dkt. 33) that she had 10 criminal history points and was not eligible for the Safety Valve, under 18 U.S.C § 3553(f). [Dkt. 32] The Government filed a response supporting the probation officer's findings. [Dkt. 41] The Court heard arguments on October 7, 2019 and orally overruled all of the Defendant's objections at that time. This Order is filed to set forth, in more detail, the basis for the Court's oral ruling.

## BACKGROUND

Ms. Adame was indicted on, and pled guilty to, one count of Distribution of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *Plea Agreement*, Dkt. 17 at 2. The mandatory minimum sentence for this offense is five years. 21 U.S.C. § 841(b)(1)(B)(viii). The Initial Presentence Investigation Report ("PSR") calculated Ms. Adame's criminal history score as 10, with a criminal history category of V, which she objects to. *Initial PSR* ¶¶ 51-53, Dkt. 30. The Initial PSR found that she had two 2-point offenses[1] and seven 1-point offenses, four of which were included in the calculation of Ms. Adame's criminal history category. *Id.* at 6-13. The Initial PSR also found that she committed the instant offense while under a criminal justice sentence, adding two criminal history points. *Id.* ¶ 52.

Adame also objects to the Probation Officer's determination of her "Safety Valve" eligibility. *Def.'s Objections* at 17, Dkt. 32. The First Step Act of 2018 expanded the eligibility of defendants to be sentenced below the mandatory minimum for certain types of controlled substances offenses. Pub. L. 115-391,

---

[1] Paragraph 39: The Defendant was sentenced to 180 days in jail with 96 days suspended for driving without privileges and failure to provide proof of insurance in Ada County, Idaho. Paragraph 41: The Defendant was sentenced to 60 days in jail following her failure to complete community service for charges of driving without privileges, failure to provide proof of insurance, and inattentive or careless driving in Canyon County, Idaho.

Title IV, § 402(a), Dec. 21, 2018, 132 Stat. 5221. In order to be eligible for a sentence below the mandatory minimum the Court must find that Ms. Adame meets certain criminal history requirements. 18 U.S.C. § 3553(f). Section 3553(f), known as the "Safety Valve," is reproduced below:

> (f) LIMITATION ON APPLICABILITY OF STATUTORY MINIMUMS IN CERTAIN CASES.—Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846), section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), or section 70503 or 70506 of title 46, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—
>
> > (1) the defendant does not have—
> >
> > > (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> > >
> > > (B) a prior 3-point offense, as determined under the sentencing guidelines; and
> > >
> > > (C) a prior 2-point violent offense, as determined under the sentencing guidelines;
> >
> > (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> >
> > (3) the offense did not result in death or serious bodily injury to any person;
> >
> > (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

18 U.S.C. § 3553

The Final PSR found that Adame, having more than four criminal history points (excluding 1-point offenses), did not meet the requirements of subsection (f)(1)(A). *Addendum to PSR* ¶¶ 15-18, Dkt. 33-1. This rendered her ineligible for the Safety Valve.

Adame makes two statutory interpretation arguments in support of her safety valve eligibility. *See Def.'s Objections* at 19, Dkt. 32. First, she argues that section 3553(f)(1) should be read in the conjunctive to require that the Court find all three of: (A) more than 4 criminal history points, (B) a 3-point offense, and (C) a 2-point violent offense, before she is ineligible for the Safety Valve. Her second argument is that "status points," assigned for being under a criminal justice sentence during the commission of the instant offense, are different than "offense-based" points, and should not count toward her criminal history points under section 3553(f)(1)(A).

## LEGAL STANDARD

1. **Determination of Defendant's Criminal History Category**

The Government bears the burden of proof for any fact that the sentencing court would find necessary to determine the base offense level or criminal history category. *U.S. v. Felix*, 561 F.3d 1036, 1043 (9th Cir. 2009). Normally, at sentencing, the government must prove any fact by a preponderance of the evidence. *Id.* at 1045-46.

The defendant may challenge the existence of a prior conviction, however "[c]ollateral attacks at sentencing on prior state court convictions are prohibited." *U.S. v. Martinez-Martinez*, 295 F.3d 1041, 1044 (9th Cir. 2002). The only narrow exception to this prohibition is for convictions obtained in violation of a Defendant's Sixth Amendment right to counsel. *Id.* (citing *Custis v. U.S.*, 511 U.S. 485, 490-97 (1994)).

2. **Statutory Interpretation**

The Court's objective when interpreting a statute is to ascertain the intent of Congress and to give effect to legislative will. *Moorhead v. United States,* 774 F.2d 936, 940 (9th Cir.1985). The Court begins with the statute's plain language. *Id.* at 941. Absent a clearly expressed legislative intent to the contrary, the plain meaning of the statutory language is controlling. *Id.*

A statute is passed in whole and not piecemeal. Thus, in interpreting a statute, examination of the whole, not isolated words, will disclose legislative intent. *Id*. In expounding the meaning of the statute, the Court must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy. *Philbrook v. Glodgett*, 421 U.S. 707, 713 (1975).

## ANALYSIS

**1.     Ada County Conviction, Case No. CR-MD-2016-3096**

Paragraph 39 of the Final PSR assigned two criminal history points for Ms. Adame's conviction of driving without privileges and failure to provide proof of insurance in Ada County, Case No. CR-MD-2016-3096. *See* USSG § 4A1.1(b).[2] She objects to the assignment of two criminal history points and argues that she should only receive one point for this offense. *Def.'s Objections* at 4, Dkt. 32. Adame argues that the Government has to prove that she was sentenced to 60 or more days in jail by clear and convincing evidence. This is because, she argues, two additional criminal history points would have an "extremely disproportionate effect" on her sentence. *Id.* at 10 (citing *United States v. Jordan*, 256 F.3d 922, 927

---

[2] Section 4A1.1(b) provides: "Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."

(9th Cir. 2001)). Adame, relies on a signed guilty plea and an unmarked box on the judgment, argues that the Government did not meet its burden. *Id.* at 5-9.

A. **Government's Burden of Proof**

Normally, the government must prove any fact that the sentencing court would use to increase a defendant's criminal history score by a preponderance of evidence. *United States v. Newman*, 912 F.2d 1119, 1122 (9th Cir.1990). In *U.S. v. Jordan*, the Ninth Circuit held that when a sentencing factor has an extremely disproportionate impact on the sentence, relative to the offense of conviction, the government must prove the facts underlying the sentencing enhancement by clear and convincing evidence. 256 F3.d at 927. Here, Adame argues that the assessment of the additional criminal history point has a disproportionate impact on her sentence because it makes her ineligible for the Safety Valve.

In *U.S. v. Felix*, the Ninth Circuit confronted a similar argument and held that the government was only required to prove a prior state conviction by a preponderance of the evidence, where proof of that conviction made the defendant ineligible for the safety valve. 561 F.3d at 1045. The court in *Felix* analyzed the six *Valensia* factors to determine that a finding of safety valve ineligibility, which doubled the Defendant's sentence and increased his effective offense level by five levels, did not have an "extremely disproportionate impact" on the sentence. *Id.* at 1046-47 (citing *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000)).

Here, it is true that, if the Court 1) sentenced without regard for the mandatory minimum, 2) sustained the defendant's second objection, 3) granted the government's 5K1.1 motion, and 4) used its discretion to sentence the defendant as though the actual methamphetamine were methamphetamine mixture, the minimum guideline range would be 24 to 30 months. The mandatory minimum in this case is 60 months, before recalculating based on the Government's 18 U.S.C. § 3553(e) motion, after which it becomes 55 months. From the absolute lowest possible guideline range with the Safety Valve, Ms. Adame's sentence potentially doubles, and her effective offense level increases more than 4 levels without the Safety Valve.

However, if the Court sustained this objection, overruled Adame's second objection and sentenced her under the guidelines for actual methamphetamine her criminal history category would be IV, and her offense level would be 22, thus her guideline range would be 63 to 78 months. Proof of the underlying conviction will not have an extremely disproportionate impact on Adame's sentence. *Felix*, 561 F.3d at 1047. Accordingly, the government must only prove the underlying state conviction by a preponderance of the evidence.[3]

---

[3] However, the burden of proof does not really matter in this case. The factual issues in this case are not complex or seriously contested. The court could and would have made all requisite findings by clear and convincing evidence if burden of proof required it.

B.   **Proof of Conviction**

Turning to the substance of Ms. Adame's argument, she contends that, although the Judgment of Conviction states that she was sentenced to 84 days in the Ada County case, the court documents suggest she was only sentenced to 20 days in jail, and thus should only receive one criminal history point. *Def.'s Objections* at 5, Dkt. 32. The court document upon which Ms. Adame relies, is the written form memorializing her guilty plea. In the portion of the form that referenced the parties' plea agreement, the following cryptic reference appears:

$$\Delta \text{ PG DWP } 2^{\text{nd}} \rightarrow \ \$1K/1K + CC$$
$$180/160 \text{ all options}$$
$$2 \text{ yr unsup. probation}$$

*Guilty Plea*, Dkt. 31-1. Simply put, it is impossible to conclude from this shorthand reference to the parties' plea agreement that the Court sentenced Ms. Adame to 180 days in jail and suspended all but 20 days. First, the reference to the plea agreement is cryptic at best. Second, even if that was the parties' agreement, the form, which the defendant signed, explicitly states: "I understand that the judge is not bound by any plea agreement between the state and myself." *Id.* Finally, and certainly most importantly, the clear language of the Judgment of Conviction ordered her to serve 180 days, with 96 days suspended and provided credit for 84

days.[4] These 84 days qualify as a "sentence of imprisonment" under USSG § 4A1.2(b).

   C.   **Due Process Violation**

Finally, Ms. Adame, relying on the written guilty plea, argues that, even if the Court finds that the Defendant was ordered to serve 84 days in jail, this is was only because the sentencing judge was giving her credit for time served and would have otherwise sentenced her to 20 days.[5] *Def.'s Objections* at 10-12, Dkt. 32. Ms. Adame argues that this effectively increases her sentence because of her inability to post bond, and thereby increases her jail sentence based upon her indigency in violation of due process

Ms. Adame's argument is a collateral attack in federal court on the underlying state court sentence, which is generally not allowed. Defendant cites *United States v. Parks*, 89 F.3d 570, 572 (9th Cir. 1996) to argue that her inability

---

[4] Ms. Adame argues that the language of the Judgment sentencing her to serve 180 days, with 96 days suspended and provided credit for 84 days, was hand-written in a section where the box was not checked. However, there are multiple boxes on the Judgment which were clearly included as part of the sentence, but which were not checked by the sentencing judge. Although not checked, the section was hand-written by the sentencing judge, indicating that it was the sentence imposed and that the failure to check the box was nothing more than an oversight. *See Judgment of Conviction*, Dkt. 32-2.

[5] Idaho Code § 18-309 (2015) requires the sentencing judge to give credit for time served for any time of incarceration prior to sentencing.

to post bail, and an increase in the instant sentence, is the kind of due process violation the Court should not tolerate.

*Parks* is distinguishable. There, the Ninth Circuit held that the defendant's due process rights were violated when his federal sentence was increased based on his being under a sentence of legal financial obligation during the offense. *Id.* at 572. The Court held that, irrespective of whether a sentence of legal financial obligation was a "criminal justice sentence," it was not the kind of prior sentence that could ever increase a Defendant's sentence at federal sentencing. *Id.* This was because the Defendant was only a criminal due to his indigence. *Id.* at 572-73.

Here, Adame was not imprisoned for her indigence – she was imprisoned for a misdemeanor violation of Idaho's traffic laws. The fact that she was unable to post bond on that charge, and thereby received a longer time-served sentence than she might otherwise have, does not amount to a due process violation. It certainly is not a constitutional violation that would justify a collateral attack on the state sentence. *Custis*, 511 U.S. at 490-97.

### 2.     Canyon County, Case No. CR-2016-6369

Paragraph 41 of the Final PSR assigned two criminal history points for Ms Adame's conviction of driving without privileges, failure to provide proof of insurance, and inattentive or careless driving in Canyon County, Case No. CR-2016-6369. She was sentenced to 60 hours of community service in lieu of 60 days

in jail. She was remanded to 60 days in jail after failing to complete her community service hours. *See Def.'s Objections* at 12-13, Dkt. 32; *Bench Warrant*, Dkt. 32-5.

Ms. Adame objects to the assignment of two criminal history points and argues that she should receive zero points for this offense. *Def.'s Objections* at 13, Dkt. 32. She argues that remanding her to jail, following her failure to complete community service, violated her due process right to a probation revocation hearing[6] and her right to counsel.

A Defendant may only collaterally attack a prior state court sentence if her Sixth Amendment right to counsel was violated. *Custis*, 511 U.S. at 496 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)); *Martinez-Martinez*, 295 F.3d at 1044-45. *See also* USSG § 4A1.2 n.6 ("this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law…").

---

[6] It is not clear whether it is constitutionally required that the defendant receive a hearing before being jailed following her failure to complete community service. *Compare State v. Ditmars*, 98 Idaho 472, 474 (1977) (no requirement of a hearing prior to the court relinquishing jurisdiction) *with Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that probationers, like parolees, are entitled to revocation hearings). Even if this is a due process violation, it is not the type of core constitutional violation that allows a defendant to collaterally attack her prior sentence.

In *Custis*, the Court found that the failure to appoint counsel for an indigent defendant is a "unique constitutional defect." 511 U.S. at 496. The Court found that the Defendant's allegations of ineffective assistance of counsel, and that his guilty plea was not knowing and intelligent, were not the type of constitutional violations that rose to "the level of a jurisdictional defect resulting from the failure to appoint counsel." *Id.* In reaching its conclusion, the Court emphasized the importance of the ease of administration and finality in federal sentencings. *Id.* at 496-97. The Court noted that the appropriate place to challenge the prior sentence would be in the state court, not at federal sentencing. *Id.* at 497.

The concerns of ease of administration and finality were on full display at Adame's sentencing hearing. Relying on three brief documents and no transcripts, she asked the Court to find her due process rights were violated when she was remanded to jail over two years ago. *See Def.'s Objections* at 12-13, Dkt. 32. These violations, in turn, she argues, warranted a reduced federal sentence in the instant case.

In *Gagnon v. Scarpelli*, the Court held that a probationer or parolee is not necessarily entitled to counsel at a revocation hearing. 411 U.S. 778, 783 (1973). Instead whether counsel is required is a case-by-case decision to be made "in the exercise of a sound discretion by the state authority charged with the responsibility for administering the probation and parole system." *Id.* at 790.

Ms. Adame had counsel when she pled guilty and was sentenced to 60 hours of community service in lieu of jail. Even if her subsequent incarceration is construed as a probation violation, her right to counsel under *Gideon* was not violated when she was jailed following failure to complete community service. *Id.* at 787. Thus her collateral attack on the validity of her Canyon County sentence is foreclosed.

3.  **Safety Valve Eligibility**

    A.  **Interpretation of § 3553(f)(1)**

    Ms. Adame argues that before she can be deemed ineligible for the Safety Valve the Court must find that she meets all three of the criteria in subsection (f)(1). She argues that Congress used an "and" in the list, as such subparagraphs (A), (B), and (C) are to be read in the conjunctive. Under Adame's reading the Court would sentence a defendant without regard to the mandatory minimum unless that defendant has (A) more than 4 criminal history points; and (B) a prior 3-point offense; and (C) a prior 2-point violent offense. *Def.'s Objections* at 18-19, Dkt. 32.

    A similar argument led a district judge within the 9th Circuit to find that the statute is ambiguous and that the doctrine of lenity should be applied to adopt the interpretation favorable to the defendant. *U.S. v. Lopez*, 2019 WL 3974127, at *3 (S.D. Cal. August 21, 2019). Adopting an argument similar to that raised by Ms.

Adame here, the court in *Lopez* framed the statue as "the First Step Act states that a defendant is eligible for safety valve relief if: (1) the defendant **does not have—** (A)…; (B)…; **and** (C)…." 2019 WL 3974127, at *3 (emphasis original). This reading, however, focuses narrowly on paragraph (1), [7] while ignoring the actual language of subsection (f). *Philbrook*, 421 U.S. at 713.

Subsection (f) does not say "the defendant is eligible if" or "the defendant is ineligible unless." Rather, subsection (f) clearly states "the court shall impose a sentence … without regard to any statutory minimum sentence, if the court finds…, that—" § 3553(f). The statute thus allows a court to ignore the mandatory minimum if it finds that the defendant satisfies the conditions laid out in paragraphs (1) through (5). If the defendant fails to satisfy *any one* of the conditions in those paragraphs, then the court must sentence the defendant at or above the mandatory minimum. This reading is borne out by reference to the basic rules of grammar and legislative drafting.

Section 3553(f)(1), read in context, is what Justice Scalia and Professor Garner describe as a "conjunctive negative proof." ANTONIN SCALIA & BRIAN A.

---

[7] In legislative drafting a bill or statute is broken into Sections (3553), subsections (f), paragraphs (1), subparagraphs (A), clauses (i), and subclauses (I). House Legislative Counsel's Manual on Drafting Style, HLC No. 104-1, p. 24 (1995); *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004). The Court refers to the divisions in its opinion accordingly for clarity.

GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 120 (1st. ed. 2012) ("To be eligible, you must prove that you have not A, B, and C."). In a conjunctive negative proof, the defendant must prove that she does not meet condition (A), and that she does not meet condition (B), and that she does not meet condition (C). Thus, if the defendant meets any one of the conditions, she is not eligible for the relief provided by the statute.

Reading section 3553(f)(1) as a conjunctive negative proof is supported by the composition of the statute. In legislative drafting, the use of an em-dash following a subsection or paragraph indicates that the clauses following the em-dash independently modify that subsection or paragraph. *See Mitchell v. Chapman*, 343 F.3d 811, 829-30 (6th Cir. 2003); *Morrow v. Putnam*, 142 F.Supp.2d 1271, 1273 (D. Nev. 2001). Here, the use of an em-dash following "the court shall impose a sentence … without regard to any statutory minimum sentence, if the court finds …, that—" indicates that each paragraph in this subsection independently modify the subsection. Further, the use of an em-dash following "the defendant does not have—" indicates that each subparagraph ((A)-(C)) independently modifies the paragraph "the defendant does not have."

Thus, with regard to paragraph (1), the statute clearly reads that "the court shall impose a sentence … without regard to any statutory minimum sentence, if the court finds …, that— the defendant does not have—(A) more than 4 criminal

history points…; [and …if the court finds …, that the defendant does not have] (B) a prior 3-point offense…; and […if the court finds …, that the defendant does not have] (C) a prior 2-point violent offense….″

This reading is supported by the drafters' use of lowercase letters at the beginning of each paragraph, clearly indicating that each paragraph is not the start of a new idea, but a continuation of the subsection text. Likewise, each subparagraph is begun with a lowercase letter indicating that it continues the paragraph, and in-turn the subsection.

Each subparagraph is set off with a semi-colon, which "insulates words from grammatical implications that would otherwise follow them." SCALIA & GARNER at 162. If the drafters had intended to have each subparagraph only modify "the defendant does not have" they would have used commas to show that they are all connected, instead of semicolons to set each subparagraph apart.

Section 3553 consistently uses em-dashes when listing subparagraphs that modify the preceding paragraph and subsection. *Cf.* § 3553(a)(2). There is nothing unique about paragraph (f)(1) and it should be read like any other paragraph in the statute.

Further, it is the duty of the court to give effect to every clause and word of the statute. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Subparagraph (B) requires a 3-point offense, and subparagraph (C) requires a 2-point violent offense.

If a defendant had a 3-point offense and 2-point offense, that defendant would *always* have more than 4 criminal history points. To read paragraph (1) as Ms. Adame urges would render subparagraph (A) entirely superfluous. Rendering an entire statutory subsection superfluous is something a court should be loath to do. *Kawashima v. Holder*, 615 F.3d 1043, 1048 (9th Cir. 2010).

Finally, Ms. Adame's suggested reading would lead to truly absurd results. For example, consider a defendant charged with distributing 50 grams of pure methamphetamine and who has 5 prior felony drug convictions, each of which counts for 3 points. Such a defendant would have at least 15 criminal history points and qualify for the highest criminal history category, would be considered a career offender under the guidelines, and would be subject to a 25-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii). Yet, under Ms. Adame's reading of the statute, such a defendant would qualify for the safety valve, and be relieved from the mandatory minimum because they do not have a prior 2-point violent offense. This would truly be an absurd result.

The statute is clear on its face that each and every condition must be met before the defendant is eligible for the safety valve. Ms. Adame does not satisfy every condition because she has more than 4 criminal history points, (excluding 1-point offenses) and thus fails to meet the requirement of subparagraph (f)(1)(A). Accordingly, she is not eligible for the safety valve.

B. **Status Points**

Ms. Adame next argues that, even if the Court rejects her argument above, she should still be safety valve eligible. This is because, she argues, safety valve eligibility is premised solely on "offense-based" points, "status" points do not count.[8] *Def.'s Objections* at 22, Dkt. 32.

Section 3553(f)(1) provides that, for a defendant to be eligible for the safety valve, the Court must find that the defendant does not have (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point *offense*…; (B) a prior 3-point *offense*…; and (C) a prior 2-point violent *offense* (emphasis added).

Ms. Adame argues that the two points arising from her conviction while under a criminal justice sentence should not count toward (f)(1)(A) because these are "status" points. she argues, that because all other provisions of (f)(1) include reference to points derived from an offense, so the court should read subsection (f)(1)(A) as "more than 4 [*offense-based*] criminal history points." *Def.'s Objections* at 22-23, Dkt. 32.

---

[8] Defendant cites no authority to support this argument. *See Def.'s Objections* at 22, Dkt. 32. The Court searched for any reference to status points in relation to the safety valve and found none.

Here, as above, the Court begins with the plain language of the statute. *Turkette,* 452 U.S. at 580. The language of the statute is clear, if the defendant has "more than 4 criminal history points" (excluding 1-point offenses) she is ineligible for the safety valve. Congress used "offense" in other sections of the statute, but specifically did not use it to describe the 4 criminal history points in subsection (f)(1)(A). To read subsection (f)(1)(A) the Ms. Adame's way, the Court would commit "a cardinal sin of statutory construction" by ignoring the plain language of the provision and reading words into the statute. *U.S. v. Pocklington*, 792 F.3d 1036, 1041 (9th Cir. 2015).

The language of section 3553(f)(1)(A) is clear. Ms. Adame is ineligible for the Safety Valve if she has more than four criminal history points (excluding 1-point offenses), irrespective of whether they are so-called "status" points or "offense-based" points.

## ORDER

**IT IS ORDERED:**

1. Defendant's Objections to the PSR (Dkt. 32) are **OVERRULED**.

DATED: October 15, 2019

B. Lynn Winmill
U.S. District Court Judge